Filed 3/12/15  In re R.Z. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re R.Z., a Person Coming Under the Juvenile Court Law. | C077090 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. J06512) |
| Plaintiff and Respondent, | |
| v. | |
| C.R., | |
| Defendant and Appellant. | |

Father (C.R.) appeals from findings and orders made by the juvenile court at the conclusion of the contested six-month-review hearing (Welf. & Inst. Code, § 366.21, subd. (e).),[1] at which time the court terminated father's services.  Father disputes only the

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

court's finding that he received reasonable reunification services, arguing that his services were inadequate because his case plan failed to include "any type of mental evaluation by either a psychiatric or psychological professional." We find the claim forfeited and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The minor, R.Z., and his mother both tested positive for methamphetamine when he was born in August 2013. As a result, the San Joaquin County Human Services Agency (the Agency) investigated the family. The Agency interviewed father and learned he had a history of marijuana, alcohol, and methamphetamine abuse; he also had five children with three different women, financially supporting none of them. R.Z. and his half siblings were placed in protective custody.

The Agency investigated further and learned of father's violent history. R.Z.'s mother reported being beaten by father in front of her children and watching father beat the mother of one of his other children in front of the other woman's children. R.Z.'s mother also recalled that when she was pregnant with R.Z., father put his hand on her stomach and said "he knew the difference between a living, healthy baby and a dead baby." He told her the baby was dead inside her and would be stillborn.

Father reported to the Agency that he began using alcohol and marijuana when he was 11 years old. When he was 16 or 17, father was stealing cars and using methamphetamine; by age 20 he was heavily involved in gangs. As a result of his criminal activity, father spent many of his years as a teenager and a young adult incarcerated.

The Agency filed a petition to detain R.Z. and his half siblings, alleging the children were at risk of substantial harm because of mother's and father's substance abuse, as well as the parents' failure to provide the children with adequate care. (§ 300, subds. (b), (g), and (j).) The juvenile court subsequently found R.Z. came within the

2

court's jurisdiction, sustained the allegations in the petition, and set the matter for disposition.

Prior to the dispositional hearing, the Agency submitted its report and recommendations regarding the family. The Agency reported that father had a long history of substance abuse and a "significant history of violence." Before father could reunify with R.Z., the Agency recommended father be required to successfully complete a drug treatment program, drug court, and a domestic violence offenders counseling program. At the time the disposition report was prepared, father was enrolled in a substance abuse treatment program, was regularly visiting R.Z., and would soon begin parenting classes. To help father meet the goal of reunification, the Agency prepared a case plan, directing father to "attend and demonstrate progress in a County Certified Domestic Violence Prevention Plan," comply with all orders of the court, consistently and appropriately parent R.Z., obtain and maintain suitable housing, and stay free from illegal drugs (including inpatient treatment).

On November 19, 2013, the juvenile court presided over the dispositional hearing. All parties submitted on the reports. The court ordered father be provided reunification services, adopting the case plan recommended by the Agency, and set a six-month review hearing for May, 2014.

While the review hearing was pending, father was discharged from his residential treatment program for failing to follow the rules. Father also tested positive for methamphetamine and was dismissed from the drug court program. He was discharged from the domestic violence program after missing several classes, and he was no longer visiting R.Z. on a consistent basis. In April 2014, father was arrested for driving on a suspended license and was convicted of battery on the mother of two of his children in the presence of those children. Based on father's conduct, the Agency reported he had "not made progress toward his case plan goals. [Father] is refusing involvement in the programs that have been offered to him as he has exhibited very little level of

3

participation in every single program within his case plan." The Agency recommended terminating his services at the upcoming six-month hearing.

The parties appeared before the juvenile court for the review hearing on May 29, 2014. At the conclusion of that hearing, the juvenile court found clear and convincing evidence that R.Z. would be at substantial risk of danger if returned to his parents' custody, and there were no alternative means to protect R.Z. other than his continued removal from both parents. Father contested the Agency's recommendation that his services be terminated; accordingly, the court set a contested review hearing. The court held the hearing on July 22, 2014; at the hearing father testified and admitted he relapsed in February 2014, but claimed he had been clean since he was taken into custody in May 2014. He was currently living at a recovery house, attending church, and participating in parenting classes. He said he was drug testing regularly, was trying to get back into the drug court program, and was visiting with R.Z.

The juvenile court found father had failed to comply with his case plan. The court noted father's non-compliance with the drug court and counseling and his inconsistent visiting history. It adopted the Agency's proposed findings and orders, including terminating father's services. One of its specific written findings was that reasonable services were provided to father, "designed to aid [father] in overcoming the problems which led to the deprivation or loss of custody of the children." Father appeals from the orders entered July 22, 2014.

**DISCUSSION**

Father's sole contention on appeal is that there is insufficient evidence he was provided with reasonable services because his case plan did not include a mental health evaluation, which *may* have uncovered a mental illness that made him incapable of complying with the remainder of the case plan. He does not point us to where in the record he requested referral to such services and was denied them, and we see no evidence that any such request was made. Nor does he point us to *any* evidence that he

4

has or had such an illness. Nor does he cite any authority that would mandate--or even permit--the juvenile court, the Agency, or this court to assume such illness merely from what he classifies as his "odd behavior": his history of addiction and violence, particularly toward the mothers of his children. Nothing in the record supports his claim of error.

Further, although couched as a challenge to the finding of reasonable services, father's claim properly translates as a challenge to the juvenile court's *dispositional* order outlining father's case plan and mandating his compliance therewith. (See *John F. v. Superior Court* (1996) 43 Cal.App.4th 400, 405 (*John F.*) ["[P]etitioners are not, in truth, complaining regarding the adequacy of the reunification services. . . . [T]heir complaint is with the [juvenile] court's failure to [make an order] as part of the reunification plan"].) Father has forfeited his right to appeal the adequacy of his case plan for multiple reasons, which we set forth immediately *post*.

First, father failed to object to the contents of the case plan at the dispositional hearing, when the case plan was first formally adopted. (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 222 [parties forfeit claims of error if they fail to raise their objection in the dependency court].)

Second, father failed to object to the contents of the case plan at any point prior to the six-month review hearing. "If [father] felt during the reunification period that the services offered [him] were inadequate, [he] had the assistance of counsel to seek guidance from the juvenile court in formulating a better plan:' "The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal." ' " (*In re Christina L.* (1992) 3 Cal.App.4th 404, 416.)

Third, the dispositional order in juvenile dependency matters is an appealable order that is final and binding. (*In re S.B.* (2009) 46 Cal.4th 529, 532.) By failing to appeal or file a petition to modify the dispositional order, father has forfeited any complaint he may have regarding the contents of the case plan and the Agency's compliance therewith. (*John F., supra*, 43 Cal.App.4th at p. 405.)

**DISPOSITION**

The orders of the juvenile court are affirmed.

<u>  DUARTE  </u>, J.

We concur:

<u> BLEASE  </u>, Acting P. J.

<u> BUTZ   </u>, J.

6